*303 ORDER
PER CURIAM.
A timely[1] NOTICE OF APPEAL haring been filed March 7, 2003 by La Fon Copenhaver, Tribal Prosecutor, from a judgment of not guilty, issued from the bench by the Honorable Marvin You pee, on February 13, 2003, and good cause appearing therefore, the said appeal is granted and the matter is remanded without further proceedings for the reasons set forth below.
Defendant was charged and tried for a violation of Title VII CCOJ 2000 § 321-[2] (issuing bad checks). Following a bench trial on February 13, 2003, the Honorable Marvin Youpee, presiding, found the defendant “not guilty”. In announcing its finding of “not guilty”, the Court stated:
“The transaction that went down, the Court does not believe that, at that time, the Defendant intentionally ... in other ■words, knowingly issued a insufficient draft upon the bank” (See Court Transcript page 41, line 21 thru page 42, line '2)
It is clear from a careful reading of the entire Court transcript that the defendant did, in fact, “knowingly” issue a check when she knew that her account did not contain sufficient funds to cover her draft. Defendant appeared pro se and after being sworn in, made this statement on her own behalf:
Crystal Bighorn: I chose to testily on my own behalf because not all parties were present when I stated my reasons why I wrote the cheek ... (at page 29, lines 17-18) (after explaining that the store would not take her money order, she continues ...) So I said what I will do is I’ll write a check. Go back Monday, and deposit this *304 money order so it will cover. So that’s what I did. I wrote a check. But when I got back, I found the chicken rotten. I refused to deposit that money order. Because I wasn’t going to pay for no rotten chicken. So I will pay you ... I feel that 1 owe you $23.13. There’s no doubt about that. But I refuse to pay the $20.00 Service Charge because I went a long ways and it wasn’t my fault that you guys didn’t want to take a Tande’s Grocery orders. I mean, money orders ... (at page 30, line 6-14) (Tribal Prosecutor then cross-examines . ..)
LaFon Copenhaver: Okay. You admitted to writing the check. Correct?
Crystal Bighorn: Yes, I did.
LaFon Copenhaver: Okay. And you took it upon yourself not to make sure there was money there? Is that correct?
Crystal Bighorn: That’s correct.
The Tribal Court erred in ruling that the defendant did not have the requisite “intent” to issue a bad check because she informed the store clerk that she did not have sufficient funds to cover the check. Whether the payee who takes the check knows of the insufficiency is not relevant to the statute. Even so, if it were argued that she did not have the intent at that particular moment, she certainly “knowingly” refused to deposit the money order to cover a check she had written. Further, allowing for a non-existent defense that a “contract” existed between the defendant and the store, in that the store clerk to whom she issued the check knew that she did not have sufficient funds at the time the check was issued, also marred the Court’s “not guilty” judgment. (See Court Transcript, page 42, lines 5-8) The Court’s rationale was based upon the defendant having told the store clerk that if they would not honor her money order she would be left no choice but to write a check without sufficient funds. The Court found that the store “breached” this contract when defendant found the chicken she purchased to be rotten. The Court proceeded then to suggest that the matter was civil in nature. Again, the statute does not allow for such defenses, nor does it allow for “mitigating circumstances”. At best, the Court could have used such mitigation at the time of sentencing.
Finally, we note that Title II CCOJ 2000 § 211 mandates that appeals arising from criminal cases be assigned for oral argument. It is obvious this section does not operate when a defendant’s appeal is denied. Further, we believe this section is intended to protect a defendant who has filed an appeal, guaranteeing that defendant a right to be heard before the Court, thus precluding a summary disposition after filing of the supporting briefs. As such, this section is inapplicable to this case inasmuch as the defendant did not file the appeal, but rather, the Tribal Prosecutor filed it.
IT IS NOW THEREFOR THE ORDER OF THIS COURT:
The ‘not guilty’ judgment of the Tribal Court is set aside and the matter is remanded to the Tribal Court with instructions to conduct a new trial with a new and different Tribal Judge assigned.

. Title II CCOJ 2000 § 206(a) allows 15 days to file an appeal. We have interpreted '15 days' as '15 working days'. Gamble v. Buck Elk Jr., FPCOA #072 (1989). We take judicial notice of the fact that 16 working days elapsed between February 13, 2003 and March 7, 2003, however the Court observed President's Day February 17, 2003, as a full Court holiday.

. Sec. 324. Issuing bad checks. Whoever issues any check, draft or order upon any bank or other depository knowing that there are not sufficient funds in the defendant's account to pay such check, draft or order in full upon presentation is guilty of issuing bad checks.
Issuing bad checks shall be a Class B misdemeanor, except that a third or subsequent offense shall be a Class A misdemeanor.